NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

_____
:
LEE DODGE, INC. D/B/A BROOKLYN   :
AUTO GROUP, KIA D/B/A BROOKLYN   :
AUTO GROUP, and ROBERT A. LEE, JR.,:
individually,                    :
                                 :
        Plaintiffs,              :   Civil Action No. 10-5939 (JAP)
                                 :
    v.                           :
                                 :   **OPINION**
KIA MOTORS AMERICA, INC.,        :
                                 :
        Defendant.               :
_____:

PISANO, District Judge.

Before the Court is Defendant Kia Motors America, Inc.'s ("KMA") motion for summary judgment and relief from the automatic stay. Plaintiffs Lee Dodge Inc. d/b/a Brooklyn Auto Group, Kia d/b/a Brooklyn Auto Group ("Lee Dodge") and Robert A. Lee, Jr. ("Mr. Lee") oppose the motion. For the following reasons, the Court will grant KMA's motion.

**I.     BACKGROUND**

KMA, which has a regional office located in East Brunswick, New Jersey, distributes new vehicles under the Kia brand. Between May and August of 2010, Mr. Lee, who is the principal and sole owner of Lee Dodge, an automobile dealer located in Brooklyn, New York, sought approval from KMA to become an authorized Kia franchisee in Brooklyn by submitting an "Application for Kia Sales and Service Agreement" (the "Application"). Kia approved the Application subject to two conditions: (1) Lee Dodge was required to obtain floor plan financing, and (2) Lee Dodge was required to commence Kia sales and service operations by October 29,

2010. Lee Dodge obtained a letter of conditional approval from Ally Bank (formerly "GMAC") for floor plan financing on August 11, 2010. Its financing was suspended, however, on October 11, 2010 and Lee Dodge was unable to commence Kia sales and service operations by October 29. KMA informed Mr. Lee on that date that, because Lee Dodge had not fulfilled its conditional obligations, KMA would not issue a fully executed Dealer Sales and Service Agreement.

On November 12, 2010, Plaintiffs filed a Complaint in this Court alleging that KMA had breached its contract approving of Lee Dodge as a Kia franchisee (Count 4) and violated the New York Franchised Motor Vehicle Dealer Act (the "Franchised Dealer Act") (Count 5). In addition, Plaintiffs allege that KMA violated the Automobile Dealer's Day in Court Act (the "ADDCA"), 15 U.S.C. § 1221 *et seq.* (Count 6), breached a covenant of good faith and fair dealing (Count 7), and committed fraud (Count 8). Finally, Plaintiffs assert a claim under a theory of promissory estoppel (Count 9).[1] KMA answered on December 7, 2010 and filed a counterclaim for payment on parts and tools delivered to Plaintiffs.[2] KMA filed its motion for summary judgment on January 14, 2011, essentially stating that the parties had not realized a franchisor-franchisee relationship because Plaintiffs failed to fulfill the conditions of their agreement and, therefore, its actions were lawful. Plaintiffs respond that there are genuine issues of material fact that preclude summary judgment and that Lee Dodge was and remains a Kia franchise.

---

[1] The first three counts of the Complaint are not substantive claims but rather requests for remedies (declaratory judgment, specific performance, and injunctive relief), and as such, fail to state a claim.

[2] In this Opinion and accompanying Order, the Court grants summary judgment against Plaintiffs on all substantive counts of their Complaint. Neither party, however, has addressed KMA's counterclaim, so it persists.

2

## II.     STANDARD OF REVIEW

To prevail on a motion for summary judgment, the moving party must establish "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The district court must determine whether disputed issues of material fact exist, but the court cannot resolve factual disputes in a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

In determining whether a genuine issue of material fact exists, the court must view the facts in the light most favorable to the non-moving party and extend all reasonable inferences to that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); *Stephens v. Kerrigan,* 122 F.3d 171, 176-77 (3d Cir. 1997). The moving party always bears the initial burden of demonstrating the absence of a genuine issue of material fact, regardless of which party ultimately would have the burden of persuasion at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once the moving party has met its opening burden, the non-moving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. *Id.* at 324. Thus, the non-moving party may not rest upon the mere allegations or denials of its pleadings. *Id.* "[T]he plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

Once the moving party has demonstrated to the court the absence of a material fact at issue, the Supreme Court has stated that the non-moving party "must do more than simply show

that there is some metaphysical doubt as to the material facts...." *Matsushita,* 475 U.S. at 586-87 (citations omitted).  In other words, "[i]f the evidence [submitted by the non-moving party] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Anderson,* 477 U.S. at 249-50 (citations omitted).

The Supreme Court has specifically recognized that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupportable claims or defenses, and [ ] that [the rule] should be interpreted in a way that allows it to accomplish this purpose." *Celotex,* 477 U.S. at 323-24.  Thus, "[w]hen the record is such that it would not support a rational finding that an essential element of the non-moving party's claim or defense exists, summary judgment must be entered for the moving party." *Turner v. Schering-Plough Corp.,* 901 F.2d 335, 341 (3d Cir. 1990).

### III.     DISCUSSION

In its statement of material facts not in dispute, (Docket Entry no. 10-4), KMA proffers three documents signed by both parties and dated September 30, 2010: a letter agreement detailing the significance of the October 29 sales and service deadline (the "Letter Agreement"), *see* Decl. of Melanie Dougherty (Docket Entry no. 10-2) (hereinafter the "Dougherty Declaration), Exh. C, a "Kia Dealer Sales and Service Agreement" (the "Dealer Agreement"), *see id.*, Exh. D, and an "Amendment & Addendum to Kia Dealer Sales and Service Agreement" (the "Addendum"), *see id.*, Exh. E.  Plaintiffs do not dispute the authenticity of these documents. Opp'n at 2.

As explained in the Letter Agreement, the October 29 deadline was paramount.  Under the Franchised Dealer Act, a franchisor must provide notice and opportunity to protest to existing dealers for certain new dealer appointments within the relevant market area.  N.Y. Veh. & Traf.

L. § 463(2)(cc)(1).  The notice requirement does not apply, however, to "the addition of a new motor vehicle dealer or the establishment of a replacement new motor vehicle dealer . . . at or within two miles of a location at which a former licensed new motor vehicle dealer for the same line make of new motor vehicle had ceased operating within the previous two years."  N.Y. Veh. & Traf. L. § 463(2)(cc)(2)(ii).  A prior Kia dealer located within two miles of Mr. Lee's proposed sales and service locations had terminated its franchise relationship on October 31, 2008.  Both parties understood that the two-year, two-mile exemption to the notice requirement "should apply to [Mr. Lee's] prospective appointment if [the] dealership commences authorized Kia operations . . . no later than October 29, 2010."  Letter Agreement, Dougherty Decl., Exh. C.  Therefore, the parties agreed that the operations deadline was a condition to the effectiveness of the Dealer Agreement and Addendum; the Letter Agreement specifically provided that "[t]he Dealer Agreement and Addendum will not become effective unless [Mr. Lee] satisf[ies] this provision."  *Id.*

The Addendum contained its own language which also emphasized the October 29 deadline:

> By no later than October 29, 2010, DEALER shall (a) secure any new motor vehicle dealer licenses and any other approvals (from the State of New York or otherwise) necessary to commence authorized new Kia sales and service operations at the Temporary Facility, and (b) commence authorized, licensed Kia operations at such Temporary Facility.  DEALER acknowledges and agrees that the Dealer Agreement and this Addendum shall not become effective unless DEALER timely satisfies the deadline . . . .

Dougherty Decl., Exh. E, ¶ C.  Indeed, Plaintiffs acknowledged the "critical" nature of the October 29 deadline in their Complaint:

> During discussions with Defendant Kia Motors and/or its representatives, Defendant Kia Motors represented to Mr. Lee that the timing for the opening of his Kia dealership was critical since the prior Kia dealer in the Brooklyn market

5

>area had voluntarily terminated its Kia Dealer Sales and Service Agreement
>effective October 31, 2008.

Compl., ¶ 12. Thus, it is undisputed that the October 29 deadline was agreed to by all parties, that its importance was recognized by all parties, and that all parties understood that the Dealer Agreement and its Addendum would not become effective unless Lee Dodge commenced Kia operations by the deadline.

In its statement of material facts not in dispute, KMA avers that "Lee Dodge failed to commence Kia sales operations by October 29, 2010." (Docket Entry no. 10-4). In its opposition to KMA's motion for summary judgment, Plaintiffs profess to "lack knowledge or information sufficient to form a belief" as to whether this occurred. Opp'n at 3. Local Civil 56.1(a) provides that "any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion." Indeed, Plaintiffs have not disputed KMA's averment and have offered no evidence that Lee Dodge did in fact commence Kia operations by October 29, 2010. Thus, the Court shall deem KMA's averment an undisputed material fact for purposes of the summary judgment motion.

Under New York law,[3] where there is "a condition precedent to the formation or existence of the contract itself . . . no contract arises unless and until the condition occurs." *Oppenheimer & Co., Inc. v. Oppenheim, Appel, Dixon & Co.*, 660 N.E.2d 415, 418 (N.Y. 1995) (internal quotation marks omitted). Failure to satisfy a condition precedent to the formation of a contract entitles a defendant to summary judgment for a claim that the contract was breached. *Joemark Enterprises, LLC v. City of Newburgh*, 878 N.Y.S.2d 907 (N.Y. App. Div. 2009). In this case, it is undisputed that Lee Dodge did not commence Kia operations by October 29, 2010,

---

[3] Plaintiffs bring their action under the New York Franchised Motor Vehicle Dealer Act for a dealership that was to be based in the state of New York. KMA does not dispute that New York law applies in this case, and concedes that there is no conflict between New York law and the potentially applicable laws of other states. Therefore, the Court will apply New York law.

and so the Dealer Agreement did not become effective. The Dealer Agreement, had it become effective, was the only document that would have authorized Lee Dodge as a Kia dealer. *See* Dealer Agreement, Dougherty Decl., Exh. D at 1 ("Based upon the representations and promises of DEALER as set forth herein, COMPANY agrees to appoint DEALER as an authorized Kia Dealer and welcomes DEALER to the COMPANY's network of authorized dealers of Kia Products."); *see also* Application, Dougherty Decl., Exh. A at 6 ("No act other than the written execution of a Kia Dealer Sales and Service Agreement by an Executive Officer of Kia shall constitute approval of this application by Kia."). Because the Dealer Agreement never became effective, Plaintiffs' claim for a breach of that contract fails as a matter of law.

> For a franchise to exist under the Franchised Dealer Act, there must be:
>
>> a written arrangement for a definite or indefinite period in which a manufacturer or distributor grants to a franchised motor vehicle dealer a license to use a trade name, service mark or related characteristic, and in which there is a community of interest in the marketing of motor vehicles or services related thereto at wholesale, retail, by lease or otherwise and/or pursuant to which a franchised motor vehicle dealer purchases and resells or offers (as agent, principal, or otherwise) products associated with the name or mark or related components of the franchise.

N.Y. Veh. & Traf. L. § 462(6). The written agreement in this case that grants licenses, provides common interest in marketing of automobiles and services, and authorizes purchases and sales is the Dealer Agreement. *See* Dealer Agreement, Dougherty Decl., Exh. D at Part 2, Art. I. As described above, however, the Dealer Agreement never became effective. Therefore, Lee Dodge was never a franchise under the Franchised Dealer Act and lacks standing to make claims under the Franchised Dealer Act. *See Tri-County Motors, Inc. v. Am. Suzuki Motor Corp.*, 494 F. Supp. 2d 161, 176 (E.D.N.Y. 2007) (finding no standing under the Franchised Dealer Act for lack of a franchise). Accordingly, these claims must be dismissed.

Notwithstanding the language of the Letter Agreement and Addendum, Plaintiffs claim that Lee Dodge actually was a franchise and authorized dealer based on various documents and transactions outside the scope of the Dealer Agreement, including a "franchise approval letter" referenced by the New York Department of Motor Vehicles, correspondence from KMA referring to Lee Dodge as a Kia dealer, and the acquisition of Kia parts and tools.  Under New York law, "[a] familiar and eminently sensible proposition of law is that, when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms."  *W.W.W. Associates, Inc. v. Giancontieri*, 77 N.Y.2d 157, 162 (N.Y. 1990).  Extrinsic evidence "as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing."  *Id.*  None of the documents or transactions that Plaintiffs submit as evidence of creating a franchise, then, abrogate the unambiguous language of the Letter Agreement and Addendum, signed by all parties, that conditions the effectiveness of the Dealer Agreement on the commencement of Kia operations by the October 29 deadline.

Plaintiffs also claim that, because the initial location of Lee Dodge's Kia operations was intended to be temporary, the agreements were ambiguous as to whether sales must have commenced before the October 29 deadline.  Plaintiffs claim that the parties never contemplated that "customary" Kia operations would take place at the temporary location.  Plaintiffs' contentions, however, are based on extrinsic evidence and not on any ambiguity in the agreements.  In fact, the Addendum addresses the temporary location, and specifies that "DEALER shall conduct Kia operations at the temporary facilities" pending relocation to a permanent facility.  Addendum, Dougherty Decl., Exh. E, ¶ A.  "It is well settled that extrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face."  *W.W.W. Associates*, 77 N.Y.2d at 163

(internal quotation marks omitted).  Neither the Addendum nor the Letter Agreement are ambiguous regarding the commencement of Kia operations before October 29, 2010.  Plaintiffs' supposed "contemplations" are outside of the agreements and, therefore, Plaintiffs' arguments fail.

Plaintiffs' other claims fail as well.  Plaintiffs claim that KMA violated the ADDCA.  The ADDCA allows "[a]n automobile dealer" to bring suit against a manufacturer for "failure . . . to act in good faith in performing or complying with any of the terms or provisions of the franchise, or in terminating, canceling, or not renewing the franchise with said dealer . . . ."  15 U.S.C. § 1222.  The Third Circuit has clarified:

> There are four elements of an ADDCA cause of action: (1) the plaintiff must be an automobile dealer; (2) the defendant must be an "automobile manufacturer" engaged in commerce; (3) there must be a manufacturer-dealer relationship embodied in a written franchise agreement; and (4) the plaintiff must have been injured by the defendant's failure to act in good faith.

*Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78, 93 (3d Cir. 2000) (citations omitted).  Plaintiffs' ADDCA claim fails as a matter of law because, as discussed above, there is no "manufacturer-dealer relationship embodied in a written franchise agreement."  Furthermore, the ADDCA "protect[s] dealers . . . only against those breaches of good faith evidenced by acts of coercion or intimidation."  *Id.* (internal quotation marks omitted).  Plaintiffs neither allege nor provide any evidence of acts of coercion or intimidation.  Accordingly, Plaintiffs' ADDCA claim fails as a matter of law.

Plaintiff also claims that KMA breached the covenant of good faith and fair dealing.  "Although an obligation of good faith and fair dealing is implied in every contract, that obligation may not be implied when it would be inconsistent with other terms of the contract between the parties."  *Chrysler Credit Corp. v. Dioguardi Jeep Eagle, Inc.*, 596 N.Y.S.2d 230

9

(N.Y. App. Div. 1993) (citations omitted).  Any obligation to recognize a franchise relationship between the parties in this case when Plaintiffs failed to fulfill a condition to the formation of the relationship would be inconsistent with the unambiguous terms of the Letter Agreement and Addendum.  Therefore, this claim fails as a matter of law.

Plaintiffs also assert a claim under a theory of promissory estoppel.  "A cause of action for promissory estoppel must allege 'a clear and unambiguous promise by [a] defendant[] upon which the plaintiff[s] reasonably and foreseeably relied to [their] detriment." *Gotham Boxing Inc. v. Finkel*, 856 N.Y.S.2d 498 (N.Y. Sup. Ct. 2008) (quoting *401 Hotel, L.P. v. MTI/The Image Group, Inc.*, 251 A.D.2d 125, 126 (N.Y. App. Div. 1998)).  Plaintiffs claim that they relied to their detriment on the promise made under the Dealer Agreement to establish Lee Dodge as a franchise.  No reading of the undisputed facts in this case, however, allows the Court to conclude that Plaintiffs' reliance on promises made in the Dealer Agreement were either reasonable or foreseeable when the Letter Agreement and Addendum clearly state that the Dealer Agreement was not effective without commencing Kia operations before the October 29 deadline.  Accordingly, Plaintiffs' claim under promissory estoppel must be denied as a matter of law.

Finally, Plaintiffs assert a claim of fraud based on KMA's representations that it approved Lee Dodge as a Kia franchisee.  Under New York law, "[t]he essential elements of a cause of action sounding in fraud are a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." *Orlando v. Kukielka*, 836 N.Y.S.2d 252 (N.Y. App. Div. 2007).  In the documents accepted as undisputed fact in this case, every "approval" of Lee Dodge as a

franchisee is specified as contingent upon its commencement of Kia operations by October 29, 2010. The Court must conclude, as a matter of law, that KMA made no misrepresentations or material omissions of fact to Plaintiffs. Accordingly, Plaintiffs' fraud claim fails.

## IV. CONCLUSION

The Court concludes that KMA never granted Lee Dodge a Kia franchise and so Plaintiffs' claims fail as a matter of law. An appropriate order shall issue.

/s/ JOEL A. PISANO
United States District Judge

Dated: August 31, 2011